LUCERO, Circuit Judge,
concurring.
I concur in the judgment but write separately because I disagree with the majority’s treatment of evidence that Johnson replaced all six female Branch Managers with younger males in just twenty months. In my view, the majority conflates the individual decisions of a single supervisor with generalized, large-scale employment decisions.
Although we have stated “a plaintiffs statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals,” Fallis v. Kerr-McGee Corp., 944 F.2d 743, 746 (10th Cir.1991), we have thus far only utilized this principle to evaluate the practices of an employer or a division as a whole. In Fallís, for example, the plaintiff showed that his employer laid off four of 42 geologists under age 40 and three of nine geologists over 40 during a reduction in force. Id. at 746. Noting that Fallís’ employer proffered legitimate, non-discriminatory reasons for the disparity, we declined to infer discrimination. In Cone v. Longmont United Hosp. Ass’n, 14 F.3d 526 (10th Cir.1994), the plaintiff showed that, of 13 employees who took a year-long leave of absence, only three were permitted to return to work. Id. at 532. All three were individuals under the age of 40. Of the ten terminated employees, seven were under the age of 40 and three were over age 40. Because of the small sample size and lack of evidence that the 13 employees had substantially similar jobs, we held the plaintiff had not established pretext. Id. at 533.
These decisions correctly limited the range of inferences that a jury could draw from such tenuous evidence. But not all statistics should be dismissed so readily.[1] The relevance and nature of the generalized data on employer practices in Fallís and Cone differ from that of the statistical proffer in the instant case. Timmerman’s claim of discrimination centers on the alleged biases of a single supervisor, Trish Johnson, and in particular on Johnson’s alleged desire to place younger men in all Branch Manager positions. Evidence of Johnson’s past Branch Manager hiring decisions speaks directly to this claim. Indeed, we have held that statistical evidence much like Timmerman’s supports a claim of discriminatory termination. In Greene *1126 v. Safeway Stores, Inc., 98 F.3d 554 (10th Cir.1996), the plaintiff alleged that his supervisor fired him due to a desire to install a new team of younger managers. We concluded that “evidence that within 12 months after [the supervisor] became President (and shortly also the CEO) of Safeway at age 42, eight top-level executives over the age of 50 were replaced by younger persons,” “raised a justiciable issue of material fact which must proceed to trial.” Id. at 560-61 (citation omitted).[2]
In accordance with Greene, when a plaintiff claims that her supervisor sought to exclude members of her protected class from certain positions, I would place significant weight on evidence of the supervisor’s past hiring practices with respect to those positions. To the extent that the majority discredits such evidence simply because it neither directly addresses an employer’s proffered reasons nor compares identical employment actions, I disagree. In my view, this conclusion improperly conflates our caselaw on generalized employment decisions with analysis of an individual supervisor’s actions, thereby ignoring qualitative differences between the two types of evidence.
Nonetheless, I agree that the statistics in this case ultimately provide little material support to Timmerman’s claim for two reasons.[3] First, as the majority points out, only one incumbent female Branch Manager reapplied for her position. Second, male applicants significantly outnumbered female applicants for the Branch Manager positions. Of six applicants for the two Fort Collins openings, one was female. No women applied for the Longmont/Erie position, and two men and one woman applied for the Greeley position.[4] Upon *1127 Timmerman’s termination, five men and four women competed for the Loveland Branch Manager opening. Although Johnson selected a male applicant to replace Timmerman, one of the female applicants was offered a job as Branch Manager at another location. Thus, like the majority, I conclude the evidence of Johnson’s past hiring decisions does not preclude a grant of summary judgment to U.S. Bank.

. In Baylie v. Fed. Reserve Bank, 476 F.3d 522 (7th Cir.2007) (cited at Maj. Op. 1115), the Seventh Circuit recognized that, in an individual treatment case, some statistics are more probative than others. The court provided the following hypothetical scenario as "the kind that permit[s] a sound inference in an individual case”:
A plaintiff who accuses Supervisor X of discrimination because he never has promoted a black person, and often says disparaging things about black workers, is drawing a statistical inference: that if X has been indifferent to race, then selections from the pool of employees eligible for promotion would have included some black workers, and in particular would have included the plaintiff.
Id. at 523, 525. Other types of statistics, such as a calculation that the average white worker received an extra promotion every 20th year compared with the average black worker, are "only marginally relevant when an individual plaintiff seeks an award of damages.” Id. at 525.

.The majority asserts that Greene does not have persuasive value because it "is not a case about pretext.” (Maj. Op. 1117-18.) As the majority points out, Greene decided whether the plaintiff established his ADEA claim "directly, by presenting direct or circumstantial evidence that age was a determining factor in his discharge.” 98 F.3d at 560 (quotations omitted). However, this does not render its analysis of statistical evidence inapplicable to the instant case, decided at the pretext step of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Intentional discrimination — the focus in Greene — remains the ultimate question throughout a McDonnell Douglas inquiry- See Ortiz v. Norton, 254 F.3d 889, 896-97 (10th Cir.2001) (“[I]ntentional discrimination ... is the ultimate question; consequently it is paradoxical to assert that evidence of discriminatory motive cannot be considered [at the pretext stage].”) (quotations and citations omitted).
Nor do I agree that the timing of Johnson's decisions meaningfully distinguishes the present case from Greene. Although Greene held that statistical evidence of events that took place within a year of the plaintiffs firing was material, it did not impose a bright-line rule excluding data older than one year. 98 F.3d at 560. Here, the Branch Manager hiring decisions took place within 20 months of Timmer-man's termination. Two of these decisions— for the Branch Managers of the two Fort Collins locations — occurred in spring of 2002 and thus within the one-year window utilized by the majority.

. Johnson also testified that she neither made the final termination decision nor recommended Timmerman’s termination. Instead, Steve Lovas, her superior, decided to fire Timmerman at the suggestion of Linda Sin-coff. As the majority notes, such a decision cannot be imputed to Johnson. See Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1290 (10th Cir.2007). Nonetheless, U.S. Bank arguably waived this argument in its brief by stating that Johnson terminated Tim-merman's employment.

. The record reveals that another woman, Stacie Chacon, applied for the Greeley Branch Manager position at some point in 2001, but the date of her application as well as the circumstances surrounding her sworn statements are unclear. A November 29, 2005 declaration by Chacon states that she submitted an internal application and resume to Johnson in October 2001 — two months after Jeff Jirón assumed the Greeley position. *1127 A second affidavit by Chacon, which is not dated, explains that she applied for the Branch Manager position “shortly after Trish Johnson became the Northern Colorado District Manager.” According to this affidavit, Chacon felt that she was denied the position despite her "superior qualifications” and that Johnson discriminated in hiring only young men as Branch Managers. Chacon also attests that a U.S. Bank attorney pressured her to sign a false affidavit, which she refused to do. A third Chacon affidavit, dated January 20, 2006, refutes many of the statements contained in the second affidavit — including those concerning Johnson’s discriminatory hiring and the U.S. Bank attorney’s attempt to secure a false affidavit. This third affidavit instead contends that Mari Newman, an attorney for Timmerman, drafted a misleading second affidavit that Chacon signed “just to get rid of Newman’s incessant telephone calls.” Attorney Newman disputes this characterization. According to Newman's sworn statement, Newman reviewed each paragraph of the second affidavit with Chacon and made all requested changes.
It appears that U.S. Bank’s contention that Newman violated ethical rules simply by contacting Chacon without U.S. Bank's knowledge or consent is unwarranted. Because Chacon does not have authority to commit U.S. Bank to a position with respect to this litigation, Chacon is a bystander witness and not a represented party. See Ethics Comm. of the Colo. Bar. Ass’n, Formal Op. 69 ¶ 17 (1987) (“Employees who constitute the party are differentiated from those who are bystander witnesses by their authority to commit the organization to a position regarding the subject matter of representation.”). Thus, Newman did not need to obtain opposing counsel’s consent before speaking to Chacon. Nonetheless, it is troublesome that the record before us contains at least one affidavit with false statements and reveals that attorneys for at least one of the parties acted improperly in their dealings with Chacon. It is also troublesome that at oral argument, counsel for the parties contradicted each other over whether Chacon’s statements were submitted as an admission against interest of U.S. Bank in the lower court.