In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3465

BRADLEY A. LAVITE,

*Plaintiff-Appellant,*

*v.*

ALAN J. DUNSTAN, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:16-cv-00882-DRH-RJD — **David R. Herndon**, *Judge.*

ARGUED APRIL 2, 2019 — DECIDED AUGUST 7, 2019

Before HAMILTON, BARRETT, and SCUDDER, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Bradley Lavite is a combat veteran who works in the Administration Building of Madison County, Illinois, as superintendent for the County's Veterans Assistance Commission. In the spring of 2015, government officials in Madison County banned Lavite from the Administration Building indefinitely. They did so shortly after learning that Lavite had experienced a PTSD episode

during which he threatened a police officer and then kicked out the windows of a squad car.

The ban lasted for nearly 20 months. Lavite kept his job the entire time but had to work remotely. A few months before the ban was lifted, Lavite filed this lawsuit against Madison County and the government officials he deemed responsible. He alleged seven federal claims and one state-law claim. The district court granted summary judgment for the defendants on all federal claims and declined to exercise supplemental jurisdiction over the remaining state-law claim. We affirm.

I.   *Factual & Procedural Background*

Bradley Lavite is employed by the Veterans Assistance Commission of Madison County, Illinois, where he has served as superintendent since 2009. Commission personnel, including Lavite, are not actually employees of Madison County, but Lavite works frequently with County officials.

One of Lavite's early projects as superintendent was establishing the first veterans' alternative treatment court in Illinois. The funds for the court were raised by a nonprofit, Friends of McAtac Foundation, which was incorporated in 2010 with the specific purpose of raising money to support this project. Lavite served on the board of the Foundation, which raised $30,000 in its first three years.

In the spring of 2013, Madison County's probation department was suffering from budget cuts. County Administrator Joseph Parente asked Lavite whether he would be willing to allocate some of the Veterans Assistance Commission's budget to pay the salary of a probation department employee whose position was in jeopardy. Lavite refused. The same

spring, Lavite was again asked to divert money to benefit the County, and he again objected. At a 2013 Commission meeting, someone proposed using a portion of the $30,000 raised by the Foundation to send several local judges and probation officers to an alternative treatment court conference in California. Lavite objected, arguing that those funds were meant to benefit Madison County veterans directly. He alleged that he was not invited to and has no knowledge of any subsequent meeting of the Foundation's board. As we discuss in detail below, Lavite argues that his 2013 objections to the County's use of Commission funds are examples of free speech protected by the First Amendment and motivated County officials to ban him two years later from the Administration Building.

Since his release from active duty in 2004, Lavite has suffered from Post-Traumatic Stress Disorder, known as PTSD. On March 5, 2015, Lavite suffered a PTSD episode. His wife called 911 and asked first responders to transport him to the Veterans Administration Medical Center in St. Louis. Police officers responded to the call, took a volatile Lavite into custody, and placed him in a holding cell in the Madison County jail. Lavite's PTSD symptoms did not improve. The officers later placed him in a squad car to transport him to a local mental health facility. Lavite was upset that officers were not transporting him to the St. Louis facility that he and his wife had requested, and his episode escalated. He began yelling profanities and threats at an officer. He then proceeded to kick out the rear windows of the squad car in which he had been placed. No one was injured. Lavite eventually was transported to the VA center in St. Louis. The incident was captured on video by the squad car's dashboard camera. Lavite was charged with criminal damage to government-

supported property, which was later amended to disorderly conduct. On June 8, 2015, Lavite was found guilty of this offense.

Shortly after the incident, Tom Gibbons, the State's Attorney for Madison County, was told about it. He contacted County Sheriff John Lakin. After watching Lavite's behavior on the video, Lakin was troubled to learn that Lavite worked for the Veterans Assistance Commission with its office in the Administration Building. Lakin thought Lavite posed a danger to building employees and the public who might visit the County building. Lakin shared his concerns with County Administrator Joseph Parente, who in turn decided to issue an order barring Lavite from County property. Alan Dunstan, the County Board Chairman at the time, also reviewed the dashboard camera footage and agreed with Parente's decision. The extent of the ban is disputed. Lavite asserts that he was prohibited from entering all County property. Defendants contend that he was barred from entering only the Administration Building.

In May 2015, the County hired a doctor to examine Lavite, review the video, and determine whether it would be safe for Lavite to work from County property again. The County doctor determined that Lavite was not fit to return for work. Lavite's personal physician disagreed and wrote a letter explaining that she believed it was safe for Lavite to return to County property with no limitations. Defendant Parente did not believe that Lavite's physician viewed the dashboard camera footage in rendering her assessment and recommendation.

Lavite kept his job and worked remotely until December 2016, when a new County Board Chairman was elected and lifted the ban on Lavite from County property. Throughout

the period of the ban, Lavite was paid his full salary by the Veterans Assistance Commission.

On August 5, 2016, before he was allowed to reenter the Administration Building, Lavite filed this suit in the Southern District of Illinois against Dunstan, Parente, Lakin, Gibbons, the Madison County Sheriff's Department, and Madison County for compensatory and punitive damages.[1] Lavite later filed his operative First Amended Complaint against the same defendants in their individual and official capacities. At the conclusion of discovery, the defendants filed motions for summary judgment. The district court granted defendants summary judgment on all federal claims and declined to exercise supplemental jurisdiction over the sole remaining state-law claim. *Lavite v. Dunstan*, 2018 WL 5437717 (S.D. Ill. Oct. 29, 2018).

II. *Analysis*

We review a district court's grant of summary judgment *de novo*, construing all facts and factual disputes in favor of the nonmoving party. *Steimel v. Wernert*, 823 F.3d 902, 910 (7th Cir. 2016). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Carmody v. Board of Trustees of University of Illinois*, 893 F.3d 397, 401 (7th Cir. 2018) (citations and quotations omitted). First, we review Lavite's First Amendment claims against all defendants and State's Attorney Gibbons

---

[1] Lavite also requested an injunction ordering defendants to lift the ban. That request became moot when the ban was lifted.

specifically. We then proceed to Lavite's due process claims against all defendants and Sheriff Lakin specifically.

A. *First Amendment*

Lavite asserted four First Amendment claims. Counts I and II were against all defendants and Counts VI and VII were against only State's Attorney Gibbons. In Count I, Lavite alleged that the defendants violated his First Amendment right to assembly by banning him from Madison County property. In Count II, he alleged he was illegally banned from County property in 2015 in retaliation for his objections in 2013 to using Friends of the McAtac Foundation funds to pay the salary of a probation department employee and to send judges and probation personnel to the California conference, all in violation of his First Amendment right to free speech and expression. Counts VI and VII alleged that State's Attorney Gibbons violated Lavite's right to free assembly by advising County Chairman Dunstan and County Administrator Parente that banning Lavite from County property was legal, or in the alternative, failing to advise them that the ban was illegal. We review the district court's grant of summary judgment on the assembly claims first, followed by our analysis of the free speech retaliation allegation.

1. *Freedom of Assembly*

a. *Nonpublic Forum*

Any regulation of speech or assembly on government property must be able to withstand some degree of constitutional scrutiny. The level of scrutiny depends in part on the nature of the public property at issue. See *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–46 (1983). Governments have the least amount of latitude in restricting

access to traditional public fora. Open or traditional public fora are spaces like streets and parks that are generally "open for assembly and debate." *Id.* at 45, 55. The government can also designate spaces not traditionally open to public assembly and debate as public fora, but it must do so intentionally, not "by inaction or by permitting limited discourse." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985); see *DeBoer v. Village of Oak Park*, 267 F.3d 558, 565 (7th Cir. 2001). A space the government intentionally characterizes as open to expressive activity is known as a "designated" public forum. *International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992).

In both traditional and designated public fora, "reasonable time, place and manner regulations are permissible, but any content-based prohibition is permissible only if it is necessary to serve a compelling state interest…." *DeBoer*, 267 F.3d at 566; see also *Cornelius*, 473 U.S. at 800. Regulations on nonpublic fora are subject to a less demanding constitutional standard. The government may restrict access to a nonpublic forum "as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Cornelius*, 473 U.S. at 800, quoting *Perry Education Ass'n*, 460 U.S. at 46 (alteration in *Cornelius*).

The district court addressed Lavite's assembly claim only as it applied to a ban on Lavite's presence in the Administration Building. *Lavite v. Dunstan*, 2018 WL 5437717, at *3–*5. The parties disputed whether Lavite had been banned from all County property or just the County Administration Building. We read Judge Herndon's opinion to have decided that there was no material dispute as to the fact that Lavite was

banned from only that one property. On appeal, Lavite argues that the district court erred in restricting the analysis to that building. We disagree.

The defendants offered multiple pieces of evidence to support their assertion that the ban applied only to the County Administration Building. The letter from Parente to Lavite that served as the order said: "Per our telephone conversation this morning … until further notice, you are not permitted to enter the Madison County Administration Building." The letter made no reference to other County property. The defendants also submitted an email Lavite sent to Parente. In the email, Lavite thanked Parente for his earlier call and told Parente that he had spoken with his employer, who was fine with him taking "paid time off until some of this gets resolved…." He also wrote that there were "No worries about me coming to the Admin Bldg for anything." Both Parente and Dunstan also provided affidavits saying the ban was specific to the Administration Building.

Lavite did not offer evidence that he was banned from all County property. As the non-moving party, Lavite is entitled to all reasonable inferences in his favor, but "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Carmody*, 893 F.3d at 401 (internal quotations omitted). Lavite did not present evidence to raise a genuine issue of fact on this point.

The district court correctly classified the Madison County Administration Building as a nonpublic forum. In assessing the relative public nature of a government-owned location, courts should focus on the government's intent. "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a

nontraditional forum for public discourse." *Cornelius*, 473 U.S. at 802.

The Administration Building is an office building, not a traditional public forum open to public assembly and debate, and Lavite did not offer evidence indicating that Madison County intended to designate it as a public forum. The building is a five-story office space, housing over twenty County departments. No evidence suggests that this was a space in which advocacy or interest groups met, let alone distributed leaflets or literature. At most, the building displays an informational bulletin board notifying County residents and employees of local events. Lavite offered no evidence characterizing the type of events advertised or the frequency of postings on the board. The lobby of the building, as Lavite points out, is open to the public, but visitors sign in at a security post and the space is open for public events only with advance approval. The district court correctly concluded that Lavite failed to offer evidence that, in policy or practice, the building was used for political activity or assembly of the public.[2]

The district court's decision is consistent with our description of similar government property as a nonpublic forum in *Grossbaum v. Indianapolis-Marion Building Auth.*, 63 F.3d 581, 586 (7th Cir. 1995). In *Grossbaum*, the relevant space was the

---

[2] Lavite asserts for the first time on appeal that the Administration Building was used for several additional public functions. For example, he contends that citizens of Madison County vote in the building, that protesters often assemble with placards on the building's grounds, and that the press is frequently invited to the building to conduct interviews and take public statements. Our review cannot include facts outside of the summary judgment record, so we do not consider these assertions in ruling on Lavite's First Amendment Freedom of Assembly claims.

lobby of a city-county building housing many of the offices, agencies, and departments of the City of Indianapolis and Marion County, Indiana. *Id.* at 582. The lobby of the building was also "open to the public during business hours" and "by policy and longstanding practice … a wide variety of public and private speakers" were provided access to the space. *Id.* In this case, we have even less evidence indicating that the relevant government entity intended to designate the office building as a public forum. In sum, the summary judgment record did not include facts from which a reasonable trier of fact could conclude that Madison County intended to open the Administration Building to expressive activity.

### b. *Motivation for the Ban*

In the district court, the defendants argued that Lavite's right to assemble on government property was not violated because the ban on his presence in the building was viewpoint-neutral and reasonably motivated by legitimate safety concerns. The district court found that Lavite failed to offer evidence to the contrary. 2018 WL 5437717, at *5, *8. We agree.

Because the Administration Building is a nonpublic forum, the defendants' restriction on Lavite's access to the building would violate the Freedom of Assembly Clause only if it were unreasonable or imposed to suppress Lavite's viewpoint on a subject that he and others would otherwise be permitted to discuss in this forum. "Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius*, 473 U.S. at 806. Defendants' restriction in this case was content-neutral. It was based on safety, not subject matter or viewpoint.

Lavite argues that banning him from the Administration Building was unreasonable. Unlike in other First Amendment cases where plaintiffs are prohibited from certain activities like distributing flyers or erecting signs, Lavite was banned from entering the county building for any purpose. Banning him from a government building entirely was more restrictive than banning the specific activities of a person in the building, but that is not the relevant standard. "The Government's decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." *Cornelius*, 473 U.S. at 808. The government has an interest in ensuring the safety of its employees and the public generally. After Lavite displayed violent behavior in his encounter with police, the defendant officials decided that he posed a risk to the employees who worked in his office building. The facts of that violent episode are not disputed. For First Amendment purposes, this decision was reasonable, and Lavite has not produced evidence to create a triable issue here. "[T]he Government, 'no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.* at 800, quoting *Greer v. Spock*, 424 U.S. 828, 836 (1976).

Lavite also argues that the ban was an impermissible attempt to retaliate against him for his objections in 2013 to using McAtac Foundation funds to support the County's probation department and to send local judges and probation officers to a conference. As the district court noted, this argument makes little sense given the timeline of events. Lavite voiced his objections to the proposed spending in the spring of 2013. He retained full access to the Administration Building for the next two years. Not until March 2015, right after Parente viewed the dashboard camera footage of the police incident,

was Lavite banned from the building. Given the two-year gap, we agree with the district court that Lavite's unsupported speculation that the defendants banned him from the county building because of his opposing viewpoint on spending the Commission's money does not show a genuine issue of material fact.

In resolving Lavite's assembly claim, we are not addressing bans that would exclude a civilian entirely from access to government offices, which would raise issues under the First Amendment right to petition the government, which has not been argued here. This is an unusual case in that plaintiff was not a public employee but worked in a government office building and managed to keep working and earning his salary during a 20-month ban on entering that building. The County's decision to ban Lavite from the Administration Building because of his violent behavior reflects the reality that the building is his office and thus a location he would enter regularly. It is an example of government acting as would a private owner managing its property. We express no view on cases in which a local government bars someone from accessing government services in a building and makes no alternative arrangements for meaningful access to government offices and services.

### 2. *Retaliation for Free Speech*

The timing of events is also important for Lavite's free speech retaliation claim. "'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019), quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in

constitutionally protected speech; (2) he suffered a deprivation likely to deter his free speech; and (3) his protected speech was at least a motivating factor for the deprivation. See *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). The first and third prongs—i.e., constitutionally protected speech and causation—are contested here.

The district court found that because Lavite's 2013 comments were made pursuant to his duties at the Veterans Assistance Commission, they did not qualify as First Amendment speech. *Lavite*, 2018 WL 5437717 at *5–*6, citing *Garcetti v. Ceballos*, 547 U.S. 410, 416, 421 (2006). We are not convinced, however, that *Garcetti* reaches so far. *Garcetti* held "that when *public* employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421 (emphasis added). Lavite was not a public employee working for Madison County, so *Garcetti* does not necessarily apply.

We need not decide the *Garcetti* issue, though, because Lavite cannot satisfy the causation element of his First Amendment retaliation claim. A plaintiff "must show 'a causal link between the protected act and the alleged retaliation.'" *Woodruff*, 542 F.3d at 551, quoting *Roger Whitmore's Automotive Services, Inc. v. Lake County*, 424 F.3d 659, 669 (7th Cir. 2005); see also *Nieves*, 139 S. Ct. at 1722 (plaintiff must establish causal connection between defendant's retaliatory animus and plaintiff's injury).

To prove causation on a First Amendment retaliation claim, a plaintiff may rely on both direct and circumstantial

evidence. *Hobgood v. Illinois Gaming Board*, 731 F.3d 635, 643–44 (7th Cir. 2013); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965–66 (7th Cir. 2012). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Kidwell*, 679 F.3d at 965, quoting *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 720 (7th Cir. 2005), quoting in turn *Eiland v. Trinity Hospital*, 150 F.3d 747, 751 (7th Cir. 1998). "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." *Long v. Teachers' Retirement System of Illinois*, 585 F.3d 344, 350 (7th Cir. 2009). "[T]hese categories of evidence are not exclusive, nor are they a set of prongs of a circumstantial evidence 'test.'" *Hobgood*, 731 F.3d at 644.

Lavite offers circumstantial evidence to show causation, citing seven facts that he argues should have defeated summary judgment: (1) Defendants instituted the ban despite Lavite's psychiatrist's recommendation that he be allowed to enter all County property without restriction; (2) the ban was applied only to Lavite as opposed to all veterans suffering from PTSD; (3) Lavite was replaced as a McAtac Foundation board member in June 2015; (4) Lavite attended a benefit dinner with a state senator who said he did not feel threatened by Lavite at that event; (5) defendants did not lift the ban until a new County Chairman was elected, despite the fact that Lavite experienced no subsequent PTSD episodes; (6) Lavite has not had any PTSD episodes or violent incidents since he was allowed back in the Administration Building; and (7) a state-court judge in November 2016 confirmed that Lavite must be allowed to attend all of his court hearings, but the judge did

not require that Lavite be allowed into the Administration Building, and the defendants did not lift the ban.

None of this evidence supports a reasonable inference of causation between the ban imposed on Lavite in 2015 and his 2013 objections to the proposals to divert some of his Commission's budget to other County purposes. Given the passage of time and the weakness of the circumstantial evidence, we conclude that any inference that the 2015 ban was motivated by the 2013 budget objections would be unreasonably speculative. Lavite's only evidence that even refers to the Foundation was the fact that he was removed from its board in 2015. That evidence still does not permit a reasonable fact-finder to infer that the defendants banned Lavite from the Administration Building to punish him for his Foundation-related comments two years earlier or in an effort to have him removed from the board. Lavite provided no information as to who makes decisions to elect or appoint board members or any evidence connecting his replacement as a board member to the County defendants.

"Suspicious timing" is not always essential to establish causation, but in context and given Lavite's lack of other causation evidence, the two-year gap between the critical events helps show that summary judgment was proper. A reasonable jury could not have inferred that Lavite was banned from the Administration Building because of his earlier comments regarding use of Veterans Assistance Commission funds.

B. *Due Process*

We next turn to Lavite's due process claims. The Fourteenth Amendment provides: "No state shall … deprive any person of life, liberty, or property, without due process of

law." The Due Process Clause provides citizens with certain procedural protections when the government seeks to take away life, liberty, or property. Typically, these protections take the form of prior notice and a meaningful opportunity to be heard. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985). However, not "every person who suffers harm traceable to procedurally questionable government actions" has a valid due process claim. *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018).

To establish a due process violation, a plaintiff must actually have been deprived of a liberty or property interest entitled to constitutional protection. See *Paul v. Davis*, 424 U.S. 693, 710–11 (1976). Only then can courts move on to what level of process was due. A qualifying "interest must have a foundation in state or federal positive law … must be a free-standing entitlement and not contingent on post-injury administrative or judicial processes for recognition … [and] must itself be substantive rather than procedural in nature." *Manley*, 889 F.3d at 890. We agree with the district court that Lavite's due process claims must fail.

### 1. *Due Process Claim Against All Defendants*

In Count III, Lavite alleged that all defendants violated his due process rights because they failed to follow the Madison County Personnel Policy Handbook, which addresses the investigation and resolution of violent workplace incidents and provides in relevant part:

> To the extent practicable and reasonable, the investigation shall be conducted by the Elected Official/Department Head promptly, in an impartial manner, and confidentially. In cases

> where the perpetrator is not a County employee or in any other case the County deems advisable, law enforcement officials may be asked to conduct the investigation.

Lavite argues that in violation of this rule, he was banned from County property before an investigation was conducted and without being given any opportunity to be heard. In granting summary judgment for the defendants on this claim, the district court explained that Lavite failed to identify any substantive liberty or property interest that attached to this procedural rule so that his "allegation that Defendants violated his due process rights by not following established policy is not sufficient to create a genuine issue of material fact." *Lavite v. Dunstan*, 2018 WL 5437717, at *7. We agree.

State and local law can create and confer constitutionally protected liberty and property interests, but state and local procedural protections do not by themselves give rise to federal due process interests. See *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (Due Process Clause did not create liberty interest in credits prisoners receive for good behavior, but Nebraska law created a liberty interest for prisoners in shortened prison sentences which result from good time credits). "Even when required by statute or ordinance, purely procedural rules of state and local law give rise to constitutionally protected interests only when the mandated procedure contains within it a *substantive* liberty or property interest." *Manley*, 889 F.3d at 893; see also *Linear v. Village of University Park*, 887 F.3d 842, 844 (7th Cir. 2018) ("[P]rocedural rights based on a contract or an ordinance have nothing to do with the Due Process Clause, which protects substantive interests—rights in life, liberty, or property—rather than state-created procedures."); *Wallace v.*

*Tilley*, 41 F.3d 296, 301 (7th Cir. 1994) ("The denial of state procedures in and of itself does not create inadequate process under the federal constitution."); *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989) ("It is by now well-established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance."). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

The section of the Madison County Personnel Policy Handbook that Lavite relies upon sets out purely procedural rules. In fact, calling them rules might even be a stretch. The relevant Handbook Policy states that law enforcement *may* investigate, not that it must. Lavite did not identify any substantive liberty or property interest embedded within these procedural regulations. Summary judgment on Court III was proper.

### 2. *Due Process Claims Against Sheriff Lakin*

Lavite asserted due process claims in Counts IV and V only against Sheriff Lakin, alleging that he "had the duty to assure there were adequate rules and procedures in effect on how to conduct an investigation … pursuant to [the above cited section] of the Madison County Personnel Policy Handbook" but failed to establish these necessary procedures. In Count V, Lavite alleged in the alternative that Lakin and the "Sheriff's Department had in place such rules and procedures, but failed to implement or follow" them.

The district court granted Lakin summary judgment on Count IV because from the record it concluded that Parente, not Lakin, had banned Lavite from the County Administration Building, thereby causing any deprivation at issue. *Lavite*, 2018 WL 5437717, at *7. The court granted Lakin summary judgment on Count V because again, local procedural rules do not give rise to liberty or property interests and individuals do not have a constitutionally protected due process right to have law enforcement investigate their cases. *Id.* at *8. Summary judgment as to both claims was appropriate on those grounds and another one: in neither Count IV nor V did Lavite identify a constitutionally protected liberty or property interest of which Lakin deprived him.

As shown, Madison County procedural rules cannot create due process interests, so even if the Sheriff's Office had rules in place governing law enforcement investigations into incidents of workplace violence, any factual question as to whether Lakin followed the rules in Lavite's case would be irrelevant. His failure to do so could not provide Lavite with a viable due process claim. Lavite fares no better if we assume the Sheriff's Office had no investigative procedural rules in place. We are still left with the question of what constitutionally protected right Lavite claims he was denied by Lakin's actions or inaction. Lavite does not allege that Lakin's investigative failures denied him a "right to judicial access" or contributed to a denial of his property interest in his employment. Instead, he argues only that he was denied an unspecified due process interest because Lakin failed either to establish or to implement rules and procedures governing investigations of workplace violence. Lavite, however, "does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction." *Rossi*

*v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015). No material fact affecting this analysis was in dispute, and with plaintiff Lavite having no alleged liberty or property interest, Lakin was entitled to judgment as a matter of law.

C.  *State-Law Claim*

Finally, Count VIII of Lavite's complaint was a claim for accounting under Illinois law, seeking an accounting of Commission assets and expenditures. After granting summary judgment on all of Lavite's federal claims, the district court declined to exercise supplemental jurisdiction over the state-law claim. *Lavite*, 2018 WL 5437717, at *9. The district court acted well within its discretion in declining to exercise supplemental jurisdiction after it dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). The rule is not rigid, but this practice is common and usually sensible if all claims within the court's original jurisdiction have been resolved before trial. *Coleman v. City of Peoria*, 925 F.3d 336, 352 (7th Cir. 2019).

The judgment of the district court is

AFFIRMED.