In the

# United States Court of Appeals

## For the Seventh Circuit

No. 22-3275

KIMBERLY BARNES-STAPLES,

*Plaintiff-Appellant,*

*v.*

ROBIN CARNAHAN,[*] Administrator,
General Services Administration,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20-cv-03627 — **Virginia M. Kendall**, *Judge*.

ARGUED SEPTEMBER 27, 2023 — DECIDED DECEMBER 18, 2023

Before SYKES, *Chief Judge*, and FLAUM and LEE, *Circuit Judges*.

FLAUM, *Circuit Judge*. Kimberly Barnes-Staples applied for a Real Estate Director position with the General Services

---

[*] The Court has substituted Robin Carnahan, the current Administrator for the United States General Services Administration, for the original defendant, Emily W. Murphy. *See* Fed. R. App. P. 43(c)(2).

Administration (GSA), but the GSA hired a different candidate. Staples sued, alleging that the GSA's interview process discriminated against her because of her race and sex in violation of Title VII of the Civil Rights Act. The district court granted summary judgment in favor of the GSA, and for the following reasons, we affirm.

## I. Background

### A. Factual Background

In March 2019, the GSA announced a job opening for a regional Real Estate Director. As the job posting explained, the position was at the GS-15 pay grade, and applicants needed "at least one year of specialized experience equivalent to the GS-14 level or higher in the Federal service" to be considered. No additional educational or professional accreditations were listed in the vacancy announcement. Rather, as the posting explained, candidates would be evaluated based on their responses to job-related interview questions.

The GSA began its hiring process by screening applicants through written applications. From there, it advanced five candidates to a first round of interviews: Kimberly Barnes-Staples, a Black woman; Matt Poisson, Russell Riberto, and Joseph Skach, all White men; and Shery Wittstock, a White woman.

The GSA uses an internal document referred to as the Guideline when interviewing candidates. Included in the Guideline are procedures that seek to help prevent unlawful discrimination in the GSA's hiring process. To accord with these procedures, a three-person panel conducted the first-round interview for the five candidates. Candidates were all

asked the same questions and given equal time to answer. The interviewers independently scored the candidates' answers on each question from one to five. The panelists then collaborated to create consensus scores for each candidate's answers to each question, which were in turn used to calculate overall scores for the five candidates. Their overall scores were as follows: (1) Wittstock, 3.9; (2) Riberto, 3.8; (3) Staples, 3.15; (4) Poisson, 3.1; and (5) Skach, 2.85. At the time of the interviews, Poisson was the Real Estate Division's Acting Director, so the panel designed the scoring cutoff to advance all candidates at or above his score to the second and final round.

A new set of three panelists conducted the second-round interviews. Before discovering who advanced to that round, the second panel devised three new interview questions aimed at assessing the candidates' decision-making and problem-solving skills. Just as in the first round of interviews, the second panel agreed that Wittstock had the strongest second-round interview performance. As a result, the GSA offered her the Real Estate Director position.

### B. Procedural Background

Staples attributed the GSA's decision to hire a different candidate to sex and race discrimination, so she filed an EEOC complaint. After the EEOC dismissed it, Staples filed suit for violations of Title VII of the Civil Rights Act.[1] The GSA moved

---

[1] In addition to her race and sex discrimination claims, her complaint also alleged a retaliation claim. The district court dismissed this claim because Staples did not exhaust her administrative remedies. *Barnes-Staples v. Murphy*, No. 20 C 3627, 2022 WL 4534686, at *6 (N.D. Ill. Sept. 28, 2022). She does not press her retaliation claim on appeal, so we decline to entertain it further. *Ezell v. Potter*, 400 F.3d 1041, 1045 n.1 (7th Cir. 2005).

for summary judgment, which the district court granted. Staples now appeals.

## II. Discussion

We review the district court's summary judgment ruling de novo and "construe all facts and draw all reasonable inferences in the nonmoving party's favor." *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). "[T]he moving party may prevail by showing an absence of evidence to support the nonmoving party's claims." *Id.* (citation and internal quotation marks omitted).

Title VII prohibits employers from "refus[ing] to hire … any individual … because of such individual's race [or] … sex." 42 U.S.C. § 2000e-2(a)(1). "[T]o hold the [GSA] liable, [Staples] must show that her race [or sex] 'played a part' in" the hiring decision. *Crain v. McDonough*, 63 F.4th 585, 591 (7th Cir. 2023) (citation omitted). "She can do so through direct or circumstantial evidence of discrimination." *Id.* In evaluating Staples's claims, we ask whether "a reasonable jury [could] find based on all available evidence that a discriminatory … motive caused" the GSA to select a different candidate for the Real Estate Director job over Staples. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 569 (7th Cir. 2017).

Staples brings her claims under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–07 (1973); *see also Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499–500 (7th Cir. 2017) (applying the *McDonnell Douglas* framework). The GSA concedes that Staples has stated a prima facie case of discrimination, but it presents a "legitimate, nondiscriminatory reason" for hiring

another candidate: Wittstock was more qualified. *See Lewis*, 36 F.4th at 760.

Consequently, "the burden shifts back to [Staples] to submit evidence that the [GSA's] explanation is pretextual," *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019), meaning it is a "lie" or a "phony reason." *Ferrill*, 860 F.3d at 500. If the GSA "honestly believed" it made the correct employment decision—even if its decision was "inaccurate[,] unfair[,] … foolish, trivial, or baseless"—Staples's claims cannot succeed. *Coleman v. Donahoe*, 667 F.3d 835, 852–53 (7th Cir. 2012) (citation omitted).

## A. Race Discrimination

Staples advances multiple arguments supporting her racial discrimination claims. She argues that the GSA did not follow its internal antidiscrimination procedures, which allowed it to hire an inferior candidate. Staples further contends that she was the superior candidate, so the GSA's offered hiring justification—that Wittstock was the better candidate—was pretextual. Operating in the background, Staples asserts, is a GSA practice of discrimination against Black candidates and employees.

### 1. Failure to Follow Procedures

According to Staples, one of the GSA's second-round interview questions violated the Guideline because it was "tailored to a specific candidate." She further contends that the question also contravened the Guideline's suggestion to not ask questions that assess competencies learned on the job.[2]

---

[2] Although the parties dispute whether the Guideline applied during the GSA's second-round interviews, we assume for the sake of this

These shortcomings, she explains, evince the GSA's pre-textual representation that it hired the best candidate in Witt-stock. The question asked about the following scenario: "The Commissioner has increased the leasing performance stand-ards for the Region by 50%. How would you address this chal-lenge?"

The first stumbling block for Staples's argument is that the panel drafted the question before it knew the identities of the second-round candidates. On the contrary, the person who wrote the question did not know that Wittstock would make it to the second round. Still, Staples speculates that the GSA created this question for Wittstock because she could answer it well based on her experience. Nothing she points to in the record, however, suggests that the second panel tailored the question to Wittstock. Consequently, there is no evidence that the second question violated the Guideline's prohibition against questions that give a specific candidate an unfair ad-vantage over others.

The question also did not violate the Guideline by asking about a competency expected to be learned on the job. The Guideline's examples of on-the-job competency questions—such as those relating to a candidate's familiarity with an in-ternal company policy or procedure—go to information uniquely accessible to only internal candidates. Answering the leasing performance question did not depend on this type of Real Estate Division-specific prior knowledge. Rather, it is an expertise-based hypothetical question routinely asked

---

opinion that it does because its application does not affect our ultimate conclusion.

during job interviews to assess candidates' problem-solving skills—as described in the vacancy announcement.

Staples also asserts that the GSA's failure to employ a ranked scoring system during the second-round interviews violated the Guideline. The lack of an objective scoring system, she contests, allowed the panel to "manipulate[] the process" to her disadvantage and in favor of Wittstock. This Court, however, "has … never held that a job interview must be scored according to some sort of objective criteria" to avoid triggering Title VII liability. *Blise v. Antaramian*, 409 F.3d 861, 868 (7th Cir. 2005). Indeed, "nothing in Title VII bans outright the use of subjective evaluation criteria." *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1170 (7th Cir. 1998).

Still, it is true that an employer's divergence from its standard hiring practices can establish, or at least be evidence of, pretext and defeat summary judgment. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005). We have placed a particular emphasis on this principle when an employer has applied its policies differently between protected-class and non-protected-class members. *Baines v. Walgreen Co.*, 863 F.3d 656, 664–65 (7th Cir. 2017) (holding summary judgment improper where manager made "highly unusual" deviation from standard rehiring procedures with respect to a Black candidate); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 508 (7th Cir. 2004) ("The disparate treatment of similarly-situated employees who were involved in misconduct of comparable seriousness, but did not have a similar disability, could establish pretext."). In those cases, "[e]vidence that the employer selectively enforced a company policy … would go to … the pretext analysis." *Coleman*, 667 F.3d at 858.

This is not such a case. The lack of a scoring system affected all candidates equally. In any event, the record shows that Wittstock performed the best during both the numerically scored first round and the unscored second round. Nothing in the record suggests the second panel thought anybody other than Wittstock was the best candidate at any point. *Sattar*, 138 F.3d at 1170–71 (holding that subjective criteria did not support inference of pretext absent evidence that criteria were "a mask for discrimination"). The GSA's failure to abide by its policy is "insufficient, without more, to create … an inference" of pretext. *United States ex rel. Hamrick v. GlaxoSmithKline LLC*, 814 F.3d 10, 22 (1st Cir. 2016).

### 2.  Credentials and Interviews

Next, we turn to Staples's contention that the GSA tailored its hiring criteria to hire the less-qualified Wittstock instead of Staples.

Staples was not "clearly better qualified" than Wittstock for the Real Estate Director position, at least when evaluated under the GSA's criteria. *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 894 (7th Cir. 2016). The job posting's "qualifications" section only required candidates to have "at least one year of specialized experience equivalent to GS-14 level or higher." Both Staples and Wittstock met this requirement. Beyond that, when the GSA hired Wittstock, although Staples had an MBA (whereas Wittstock did not), Wittstock had more recent and total experience within the Real Estate Division than Staples did.

The GSA's job posting indicated that it would evaluate candidates based on their responses to competency-related interview questions. However, since "both candidates

presented attractive qualifications" and the GSA selected Wittstock based on interview performance, Staples's "own opinions about [her] … qualifications [do not] give rise to a material factual dispute." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 380–81 (7th Cir. 2020) (alteration in original) (citation and internal quotation marks omitted).

Since the GSA evaluated candidates based on their answers to interview questions, Staples argues her second-round interview answers were better than Wittstock's. The panelists' depositions, affidavits, and interview notes refute that assertion. Instead, they illustrate the panel's belief that Wittstock provided the strongest responses to their questions. While Staples might believe Wittstock's answers were unimpressive, what matters is whether the GSA believed they were unimpressive and then lied about it. *See Coleman*, 667 F.3d at 852–53 (explaining that what matters is what the GSA "honestly believed" in a pretext analysis).

Staples's only substantiated support is a statement from a panelist explaining that Wittstock's answer to one question did not discuss what the Division was doing well. That fact does not render pretextual the GSA's professed belief that Wittstock was impressive and the best candidate. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 814 (7th Cir. 2005) (holding that, "in choosing between different candidates, all of whom are qualified, an employer may legitimately use subjective qualifications" assessed through interview performance). Although Staples disagrees with the GSA about whether she or Wittstock gave the best interview, her disagreement does not give rise to an inference of pretext.

Staples's claims that the GSA pretextually tailored the Real Estate Director job requirements to suit Wittstock also lack

merit: The job posting never required a specific kind of educational background or a technical license. Staples cannot fault the GSA for staying true to its job posting by not giving those kinds of credentials significant weight in its hiring process.

Additionally, Staples contests that the GSA did not offer her interviews for other positions due to her lack of technical expertise. Her argument does not provide evidence as to whether those positions required technical expertise from the start of the application process or instead added it in later in the game. As such, Staples lacks the factual support needed to illustrate that the GSA changed its hiring criteria for those positions after Staples applied as a pretext for not interviewing her. *See Lavite v. Dunstan*, 932 F.3d 1020, 1029 n.2 (7th Cir. 2019) ("Our review cannot include facts outside of the summary judgment record, so we do not consider these assertions …."").

### 3. *Statistical Evidence*

Staples next offers data on the GSA's promotion and employment rates for the premise that the GSA "fails to provide growth or leadership opportunities in … higher-level positions" for Black women. In other words, she tries to use evidence of systemic discrimination to bolster her individual claims.

For statistical "evidence of a pattern or practice" to support a claim of discrimination brought by an individual (as opposed to a class action), it must be coupled with "evidence of specific discrimination against the plaintiff herself." *Matthews v. Waukesha County.*, 759 F.3d 821, 829 (7th Cir. 2014). Indeed, data alone cannot get Staples over the hump, as it

"must be coupled with other evidence, which does most of the work." *Baylie v. Fed. Rsrv. Bank*, 476 F.3d 522, 524 (7th Cir. 2007).

It is also not enough to present raw data. Staples must draw statistical inferences from a similarly situated "group" within the workforce to provide the factual context necessary to show a pattern of discrimination. *Matthews*, 759 F.3d at 830. For example, the data must be sufficiently comparable to the "population in the relevant labor market." *Id*. Here, much of the data Staples cites originates from the GSA's nationwide pay distribution statistics, but Staples attacks the GSA's hiring practices in Region 5. Accordingly, the nationwide data does not advance her claim because of its overbroad scope.

Staples also turns her attention to the GSA's Region 5, GS-15 level promotion and hiring practices since 2010, claiming they illustrate an underrepresentation of Black candidates in the GSA's hiring processes. Staples does not provide evidence about the makeup of the candidate pool for those positions over that timeframe. We do not know how many total candidates applied to Region 5, GS-15 positions since 2010, much less how many Black candidates applied. We cannot draw conclusions from this data because Staples does not "support her claim that [the GSA's] alleged failure to promote any" Black candidates "with sufficient information about the relevant applicant pool." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 739 (7th Cir. 2006); *see Baylie*, 476 F.3d at 526 (plaintiff could not use evidence that she was passed over for promotions as evidence of discrimination when she provided "no details about who received the promotions, after what process").

In sum, none of Staples's evidence indicates race discrim-ination, even when considered "as a whole." *Crain*, 63 F.4th at 591. The district court correctly granted summary judgment on that claim.

### B. Sex Discrimination Claim

The district court found that Staples abandoned her sex discrimination claim because she did not argue it in her brief opposing summary judgment. *Barnes-Staples*, 2022 WL 4534686, at *6. On appeal, Staples frames her sex discrimina-tion claim as an "intersectional claim" inextricably tied to race.

We agree with the district court. Even assuming "a[n in-tersectional] theory of discrimination" can produce a viable claim, Staples did not "provide evidence … that the [GSA] took an adverse employment action at least in part on account of sex." *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 564 (7th Cir. 2009). She made only a passing mention to the lack of Black women in GS-15 positions since 2010 within Region 5, and she did not illustrate how she was personally discrimi-nated against because of her sex. Since Staples did not de-velop her sex discrimination argument before the district court, she waived it. *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 485 n.30 (7th Cir. 2022).

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the GSA.