In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 21-3336

WILLIAM GROVES,

*Plaintiff-Appellant,*

*v.*

SOUTH BEND COMMUNITY SCHOOL CORPORATION,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:18-cv-00979 — **Jon E. DeGuilio**, *Chief Judge.*

———————————

ARGUED SEPTEMBER 19, 2022 — DECIDED OCTOBER 19, 2022

———————————

Before WOOD, SCUDDER, and JACKSON-AKIWUMI, *Circuit Judges.*

SCUDDER, *Circuit Judge.* After not receiving two athletic administration positions at public high schools in South Bend, Indiana, William Groves invoked Title VII and brought reverse discrimination claims. The district court carefully reviewed the evidence presented at summary judgment and saw nothing allowing a jury to find that the School District, in

offering the positions to a Black applicant, discriminated against Groves because he is white. We agree and affirm.

## I

### A

South Bend Community School Corporation, which we will refer to as the School District, consists of 29 schools, including four traditional high schools: Adams, Clay, Riley, and Washington. William Groves is a longtime employee of the School District. He started in 1991 as a social studies teacher and in 2007 became the athletic director at Adams High School.

In 2017 Groves applied to serve as Corporation Director of Athletics, a newly created, District-wide position. Superintendent Kenneth Spells interviewed four applicants and ultimately recommended Seabe Gavin for the position. Dr. Spells explained that Gavin interviewed very well, inspiring confidence in his ability to repair the School District's strained relationship with the Indiana High School Athletic Association. Yet Groves interviewed poorly, with Dr. Spells finding it particularly off-putting that Groves seemed to boast of firing 24 coaches during his tenure at Adams High School. And so too did Dr. Spells question Groves's ability to restore the School District's relationship with the IHSAA given that prior instances of noncompliance with athletics regulations occurred under Groves's watch at Adams. The school board hired Gavin for the position.

Groves responded to not receiving the job by invoking Title VII and suing the School District on a theory of reverse race discrimination. He rooted his claim in the contention that he was so much more qualified than Gavin for the Corporation

Director of Athletics position that his not receiving it had to be the product of unlawful discrimination. He alleged that Dr. Spells, himself Black, wanted Gavin, who is also Black, in the role.

Groves's lawsuit further focused on a second position he applied for that likewise went to Gavin. In March 2019 the School District announced the elimination of the Corporation Director of Athletics position and the creation of a hybrid Dean of Students/Athletics position at each of the four high schools. Groves, Gavin, and seven other candidates applied for the four new positions. Although Groves received an interview, an offer never followed. Gavin, however, fared better. Principal Shawn Henderson offered the Riley High School position to Gavin, explaining that he earned the job in large part based on the quality of the answers he gave during his interview.

Groves amended his original complaint to add a claim of race discrimination based on his not receiving one of the new Dean of Students/Athletics positions and a claim of retaliation for the elimination of his athletic director position.

B

Discovery ensued and in time the School District moved for summary judgment on all counts. The district court granted the motion, explaining that Groves had failed to identify any evidence upon which a jury could rely to find he did not receive the two jobs in question because of his race.

The district court's reasoning proceeded in a couple of steps. First, the court rejected Groves's contention that he was much more qualified than Gavin for either of the two positions—so much so, at least as Groves insisted, that race

discrimination was the only explanation for his not receiving either job. The district court explained that the record evidence did not show Groves to be substantially more qualified than Gavin. To the contrary, while Groves had more experience as an athletic director, Gavin had relevant high school coaching experience. Further, both applicants, the district court continued, met the only criteria that the School District required (and posted) for the position—holding a bachelor's degree and driver's license.

Second, the district court addressed an aspect of Gavin's background that came to light well after the challenged hiring decisions (in fact, during discovery) that most troubled Groves: Gavin had a criminal record—indeed two felony convictions from the 1990s. Groves found it shocking the School District did not know about these convictions and claimed that the District chose to bury its head in the sand by purposely not following its written policy of running background checks on new hires. By Groves's account, this too showed that the reasons the School District gave for not hiring him for either of the two positions were false and pretextual, with the real reason being that he was white. The district court rejected this contention because the evidence showed that the School District interpreted its background check policy as applying only to external hires, not existing employees moving to a new position.

At bottom, the district court emphasized that it saw nothing in the record suggesting that race ever came up, directly or indirectly, during the challenged hiring processes. So summary judgment was proper for the School District on Groves's claims of race discrimination. The district court likewise

rejected Groves's claim of retaliation because he had abandoned it at summary judgment.

Groves now appeals, challenging the district court's adverse rulings on his two race discrimination claims.

## II

### A

In reviewing the district court's summary judgment decision, we take our own fresh look at the record and draw all inferences in favor of the nonmoving party—here, Groves. See *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 928 (7th Cir. 2020). The overarching question "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race" caused the adverse employment action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

At summary judgement, Groves invoked the familiar *McDonnell Douglas* burden-shifting framework in an effort to press his claim of reverse race discrimination to trial. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the plaintiff shoulders the initial burden of showing what the law calls a prima facie case of discrimination. See *id.* at 802; *Bless v. Cook County Sheriff's Off.*, 9 F.4th 565, 574 (7th Cir. 2021) (outlining the four elements of a prima facie case of reverse race discrimination). The burden then shifts to the defendant employer to offer a nondiscriminatory justification for the challenged employment action. At the final step, the plaintiff must prove that the employer's proffered nondiscriminatory reason amounted to pretext for discrimination. See *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020).

Plaintiffs like Groves most often seek to show pretext by pointing to "weaknesses, implausibilities, inconsistencies, or contradictions" in the nondiscriminatory justification that would permit a reasonable jury to infer that the employer did not tell the truth. *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 938 (7th Cir. 2022) (quoting *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 721 (7th Cir. 2021)). But identifying an inconsistency (or even a lie) is not necessarily sufficient to prove that the employer's rationale was pretext for discrimination. What ultimately matters is *causation*: the plaintiff must point to evidence that would allow a jury to find a connection between the statutorily protected factor (here, race) and the adverse action (here, Groves not receiving either of the two athletic administration jobs). See *Joll*, 953 F.3d at 929. Right to it, the controlling question is "whether a reasonable jury could find prohibited discrimination." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014).

B

The parties agree that the case turns on the final factor in the *McDonnell Douglas* framework—pretext. To fend off summary judgment, Groves had to show not only that the School District lied about its reason for not hiring him , but also that the true reason was because of racial discrimination. He did not clear this hurdle.

Start with Groves's contention that the School District disregarded its background check policy when hiring Gavin to serve as the Corporation Director of Athletics. See *Baines v. Walgreen Co.*, 863 F.3d 656, 664 (7th Cir. 2017) ("An employer's unusual deviation from standard procedures can serve as circumstantial evidence of discrimination."). The district court rightly recognized that Groves did not address the School

District's approach to internal hires with evidence—all he has is his own speculation. He identified no instances of the School District running background checks on existing employees seeking new, internal positions and offered no personal knowledge of the District's actual practices. Groves's evidentiary shortcoming proves fatal because, for its part, the School District came forward with the explanation that it has always viewed its policy as applying only to external hires. On the record Groves assembled, he fell short of identifying a factual dispute for a jury to resolve at trial. It was his burden to do so to defeat summary judgment.

Groves fared no better on his second contention that he was far more qualified than Gavin for the position in question. Here, too, the district court was right to conclude that Groves was only looking at half of the evidentiary picture. Yes, he may have been the more qualified candidate on paper alone. But the School District explained that side-by-side resume comparisons were not only the measure. How applicants performed in interviews greatly mattered, and, on this score, the record showed that Gavin outperformed Groves by a long shot.

Dr. Spells conducted the interviews and later testified that Gavin inspired confidence that he could help the School District rebuild its relationship with the IHSAA. Groves's interview, on the other hand, did not go well and left Dr. Spells uneasy about hiring him. These assessments, subjective though they may be, were entirely proper, especially given the absence of anything in the record suggesting that considerations of race influenced Dr. Spells's decision to hire Gavin as the School District's Corporation Director of Athletics.

On this record, Groves has failed to convince us that there would be "*no dispute* among reasonable persons of impartial judgment that [he] was clearly better qualified for the position." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 381 (7th Cir. 2020) (emphasis in original) (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180–81 (7th Cir. 2002)); see also *Joll*, 953 F.3d at 934 (explaining that the *Millbrook* rule applies when competing qualifications account for the plaintiff's only evidence).

## C

Groves's second claim concerning the Dean of Students/Athletics position also fell short. Once again the evidence before the district court at summary judgment showed that Gavin received the role at Riley High School based largely on the quality of his interview. Principal Shawn Henderson oversaw the interview and testified that, on balance, Gavin performed well and showed himself qualified for the new position. Groves, by contrast, interviewed poorly, ranking last among all nine applicants in the scoring compiled by the School District's interview committee. Furthermore, the difference in qualifications on paper between Groves and Gavin had narrowed by the time the School District created the new position: Gavin had accumulated two more years of relevant experience by serving as the Corporation Director of Athletics.

Having taken our own look at the evidence, we see no error in the district court's entry of summary judgment for the School District on this claim.

## III

Groves advances a range of other contentions he sees as suggesting pretext and, by extension, reverse race

discrimination. We have considered each of these points and find none of them additive or persuasive. In the end, Groves's case suffered from a failure of proof—he alleged a theory and account of reverse race discrimination but ultimately never backed it with enough evidence to allow a jury to find in his favor. For these reasons, we AFFIRM.