In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2516

SONGIE ADEBIYI,

*Plaintiff-Appellant,*

*v.*

SOUTH SUBURBAN COLLEGE, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-02031 — **Steven Charles Seeger**, *Judge.*

ARGUED JANUARY 10, 2023 — DECIDED APRIL 17, 2024

Before SCUDDER, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* Songie Adebiyi spent nearly two decades working at South Suburban College in South Holland, Illinois. She was Vice President of Student Services when the college terminated her in 2019, citing performance issues. Adebiyi alleges that the college was in fact retaliating against her for filing a charge with the United States Equal Employment Opportunity Commission and the

Illinois Department of Human Rights. The district court granted summary judgment to the college and its president, whom Adebiyi also sued, because Adebiyi failed to show a causal link between her charge of discrimination and her termination. We agree that the evidence in the record does not support Adebiyi's retaliation claim. We therefore affirm the judgment.

**I**

We recount the facts in the light most favorable to Adebiyi as the party opposing summary judgment. *Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022). Adebiyi, who is African American, began working at South Suburban College as a manager in 2000. She received promotions over the years and, in 2008, became Vice President of Student Services. In this role, she oversaw certain departments and programs, including the athletic center and the student counseling department, which housed the college's Latino Center.

Adebiyi reported directly to the college president. Donald Manning, a white man, held that position from 2012 until he announced in early 2018 that he would retire later that year. On April 12, 2018, the college's board of directors approved Lynette Stokes, an African American woman who was Vice President of Academic Services, as the new President-Elect. Manning began delegating some of his tasks to Stokes in the months leading up to his retirement.

On April 17, 2018, a few days after Stokes became President-Elect, faculty union president G.A. Griffin called a meeting with Manning, Stokes, and human resources director Kim Pigatti to discuss complaints against Adebiyi. Several counseling department employees complained about Adebiyi's

leadership style and accused her of enabling a toxic work environment. Griffin gave examples of incidents, all of which centered around how the Latino Center was run. Stokes then met with Adebiyi to discuss the complaints and concluded that the concerns raised by Griffin were unfounded. The college therefore took no disciplinary action against Adebiyi. But these events affected Adebiyi because she sought a two-week medical leave after meeting with Stokes. At the end of the medical leave, on May 1, 2018, Adebiyi filed a formal internal complaint alleging race discrimination, harassment, and bullying. On May 17, 2018, she also filed a charge with the EEOC and the IDHR alleging harassment based on race, retaliation for opposing discrimination, and unequal pay.

Manning and Pigatti investigated Adebiyi's internal complaint for approximately two months and produced a report of their findings in July 2018. They concluded that Adebiyi's complaint was unfounded. However, they reported that there was a "considerable amount of miscommunication and mistrust" in the counseling department. As a remedy, they recommended that the entire department participate in teamwork and professionalism training. They also recommended that Adebiyi create a "Communication Pathway Chart" for the department by September 30, 2018. Adebiyi appealed Manning and Pigatti's report to the board of directors, but her appeal was unsuccessful.

In September 2018, Adebiyi sent an email to Manning, Pigatti, Executive Director of Information Technology John McCormack, and another IT employee alleging that someone covertly entered her office after hours, removed files from her computer, and placed her personal emails and files on the college's network. In response, the college initiated an

investigation and hired an external forensic examiner. The day after Adebiyi sent her email, McCormack appeared unannounced in her office with two armed campus police officers. He handed a note to Adebiyi stating that her computer would be taken by the police to secure the chain of custody while her security breach complaint was being investigated.[1] Adebiyi received a replacement computer. The investigation did not reveal any improper access to Adebiyi's computer and the college deemed her complaint to have been frivolous.

On October 1, 2018, Stokes officially took over as President. She grew concerned about Adebiyi's performance after reviewing confidential documents she now had access to as President, and she had several meetings with Adebiyi regarding Adebiyi's role as Vice President. On January 18, 2019, Stokes gave Adebiyi a performance review that rated Adebiyi's performance as "satisfactory" in most respects. Stokes rated the performance of other employees who reported to her as "more than satisfactory."

On February 5, 2019, Stokes wrote a memorandum to the board of directors recommending nonrenewal of Adebiyi's contract. Some of the reasons Stokes gave for her recommendation were:

---

[1] The note that McCormack handed to Adebiyi was labeled "via hand delivery and email." It appears that McCormack emailed the note to Adebiyi in addition to hand delivering it, but Adebiyi did not receive and/or see the email until after the note was hand delivered to her. Drawing all reasonable inferences in Adebiyi's favor, as we must in reviewing the summary judgment ruling against her, we conclude that Adebiyi learned of the note for the first time when McCormack and the police officers entered her office.

- lack of administrative management and fiscal accountability—Adebiyi did not consistently meet with her subordinates, was not aware of the athletic center's spending pattern, and did not understand the scope of the Latino Center's mission;

- lack of responsibility for her duties—Adebiyi did not take an active role in reviewing the tenure process for a counselor;

- failure to abide by Pigatti and Manning's report recommendations—Adebiyi did not participate in the counseling department training and did not timely produce the Communication Pathway Chart;

- frivolous complaints against the college—Adebiyi claimed in September 2018 that her work computer was hacked but the college's investigation did not uncover any wrongdoing and cost over $7,000;

- no sense of urgency in addressing time sensitive and critical matters—Adebiyi did not timely inform the leadership about glitches in the college's class add/drop system, did not timely approve the termination of a former employee, and did not deliver closing remarks at a team retreat; and

- ongoing complaints from Adebiyi's subordinates, as evidenced by memoranda, written

> complaints, and an exit interview with the
> Dean of Student Development.

Stokes also identified other issues with Adebiyi's performance that centered around Adebiyi's "self-serving management practices" and "hands-off" approach to leadership.

Although Stokes's memorandum was framed as a "recommendation" to the board, the college president did not need board approval to act. So, on February 11, 2019, Stokes informed Adebiyi that Adebiyi's contract would not be renewed, and she would be relieved of her duties immediately. At that time, Adebiyi's EEOC and IDHR charge was still pending. In fact, Stokes informed Adebiyi her contract would not be renewed just three days before a scheduled meeting with the IDHR, Adebiyi, and the college. That meeting was slated for February 14, 2019, the same day the board "accepted" Stokes's recommendation to terminate Adebiyi in a closed session.

Adebiyi sued the college and Manning, alleging racial discrimination and retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as well as breach of contract. Defendants moved for summary judgment on all claims and the district court granted the motion. The court also denied Adebiyi's motion to file an amended complaint and engage in additional discovery.

On appeal, Adebiyi argues that the district court erred when it dismissed her Title VII retaliation claim; she does not challenge the disposition of her racial discrimination and breach of contract claims. Adebiyi also argues that the district court abused its discretion when it denied her motion to

amend the complaint and seek more discovery. We find no error or abuse in the district court's judgment on either issue.

## II

We review appeals of summary judgment de novo, viewing the record in the light most favorable to and drawing all reasonable inferences for Adebiyi. *Groves v. South Bend Cmty Sch. Corp.*, 51 F.4th 766, 769 (7th Cir. 2022).

"Title VII prohibits employers from retaliating against an employee because she 'has made a charge . . . of racial discrimination." *Runkel v. City of Springfield*, 51 F.4th 736, 746 (7th Cir. 2022) (quoting 42 U.S.C. § 2000e-3(a)). "To survive summary judgment on a Title VII retaliation claim, a plaintiff must produce evidence from which a reasonable juror could find that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the two." *Alley v. Penguin Random House*, 62 F.4th 358, 361 (7th Cir. 2023).

The district court found that Adebiyi undoubtedly engaged in protected activity when she filed her EEOC charge and that her termination nine months later was an adverse employment action. The parties do not dispute these findings.[2] The court ultimately held that Adebiyi could not

---

[2] Adebiyi does argue that she suffered another adverse employment action when, in September 2018, the college sent two police officers with the head of IT to her office to secure her computer. The district court rejected this argument but an employee may well be dissuaded from engaging in protected activity if armed police officers make an unprecedented and unannounced visit to the employee's office. *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (in the context of retaliation, an employer's action is materially adverse if "a reasonable employee would . . . be

survive summary judgment because no reasonable jury could find that there was a causal link between Adebiyi's protected activity and the college's adverse action of terminating her employment.

We agree that Adebiyi ultimately fails at the third step of her case—demonstrating a causal link between the first (statutorily protected activity) and second (adverse employment action) elements of her retaliation claim. That is because in retaliation cases, a plaintiff must show but-for causation. *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). This "does not mean that the protected activity must have been the only cause of the adverse action. Rather, it means that the adverse action would not have happened without the activity." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828, n.1 (7th Cir. 2014) (citing *Nassar*, 570 U.S. at 346–47).

To show causation "[i]n a Title VII retaliation suit, the plaintiff may submit direct or circumstantial evidence to show that her employer's action was retaliatory and thus not free from any discrimination." *Huff v. Buttigieg*, 42 F.4th 638, 646 (7th Cir. 2022) (cleaned). Relevant circumstantial evidence may include "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019) (citation omitted). Under the framework established in *Ortiz v. Werner Enterprises, Inc.*, 834

---

dissuaded from engaging in the protected activity."). We do not resolve this issue, however, because Adebiyi's arguments before us focus on the causal link between her protected activity and the adverse action of her termination, not the police visit, and it is on this issue of causation that her claims fail.

F.3d 760, 765–66 (7th Cir. 2016), we consider the evidence as a whole.

Adebiyi argues that summary judgment in favor of the college and Manning was improper because she presented sufficient evidence of causation by spotlighting suspicious timing, pretext in the college's justification for its action, and similarly situated employees being treated differently. We disagree and address the evidence Adebiyi relies on below.

## A. Suspicious timing

Adebiyi asserts that the timing of her termination was suspicious because it occurred three days before a scheduled meeting with the IDHR.[3] "Temporal proximity between protected activity and an adverse employment action can support an inference of causation between the two." *Jokich v. Rush Univ. Med. Cent.*, 42 F.4th 626, 634 (7th Cir. 2022). "A plaintiff may create a triable causation issue by demonstrating that an adverse employment action followed close on the heels of h[er] protected speech." *Kingman v. Frederickson*, 40 F.4th 597, 603 (7th Cir. 2022) (internal quotation marks omitted). At the same time, "any inference of causation supported by temporal proximity may be negated by circumstances providing an alternative explanation for the challenged action." *Jokich*, 42 F.4th at 634.

Adebiyi presented no evidence from which a jury could reasonably infer that the college wanted to terminate her before the February 14, 2019, meeting with the IDHR. Other

---

[3] The college argues that Adebiyi waived this argument because she did not develop it in the district court. We disagree, particularly because the district court recognized this argument in Adebiyi's filings and specifically addressed it in its opinion.

meetings between Adebiyi, the college, and the IDHR had taken place, and there is no indication of what the college had to gain by waiting until this particular meeting to fire Adebiyi. If Adebiyi is arguing that this February 14 meeting held a certain significance, she has presented neither a clear theory nor evidence in support. The record is silent on whether this meeting represented an important development in Adebiyi's complaint against the college and Manning. *Cf. Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015) (employer's adverse action against employee after EEOC began taking employee's charge seriously could imply retaliation even where employer took no retaliatory action earlier, at filing of charge). And there is no evidence that the college could thwart or delay the meeting by terminating Adebiyi. In fact, Adebiyi admits to attending the meeting as scheduled on February 14, 2019.

It was Adebiyi's responsibility to provide the district court with sufficient evidence to survive summary judgment, and she failed to do so: Northern District of Illinois Local Rule 56.1(b) requires, in relevant part, that the party opposing summary judgment and wishing to assert facts not set forth by the movant file "a statement of any additional material facts . . . that attaches any cited evidentiary material" not otherwise included in the parties' submissions. Adebiyi did not provide any supporting evidence that would allow a jury to assign any significance to the IDHR meeting. And without such evidence, there is nothing in the record to bridge the months-long gap between Adebiyi's filing of her EEOC and IDHR charge in May 2018 and her termination in February 2019. *See Kingman*, 40 F.4th at 603 (finding unconvincing an argument that "escalating pattern" of hostility at work connected

criticism of colleague before city council to termination three months later)

**B. Pretext**

Adebiyi next argues that she showed causation because the college's reasons for her termination were pretextual. "When evaluating a plaintiff's evidence of pretext, it is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was . . . a lie." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 937–38 (7th Cir. 2022) (internal quotations omitted). "To meet this burden at summary judgment, a plaintiff must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's asserted reasons that a reasonable person could find it unworthy of credence." *Id.* at 938. "If an employer's explanation for the challenged employment decision has been shifting or inconsistent, this may be evidence of pretext." *Id.* (internal quotations omitted).

We begin with Adebiyi's assertion that the performance issues Stokes identified were pretextual because they were all from the time Adebiyi worked under Manning, and Manning never had any issues with Adebiyi's performance. A past supervisor's opinion is not immaterial, but it is not decisive either. As a general matter, we focus on an employee's conduct at the time she was fired and "through the eyes of her supervisors at the time." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008); *see Zayas v. Rockford Mem. Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014). There is nothing in this record that would compel us to deviate from that general approach. Thus, Manning's satisfaction with Adebiyi's performance does not relieve Adebiyi of her burden to show that Stokes's complaints

about Adebiyi's performance were pretextual. Moreover, even if Manning was satisfied with Adebiyi, that does not mean that Stokes—who had sufficient time and opportunity to form her own opinions—had to have the same expectations for Adebiyi. Stokes had nearly a year to observe Adebiyi's work, first as President-Elect and then as President, and her concerns regarding Adebiyi's performance were supported by the college's records.

Consider a specific example of why Stokes was dissatisfied with Adebiyi's performance. Recall the Communication Pathways Chart Adebiyi had to complete for the counseling department. Adebiyi argues that (1) Stokes "allowed her an extension" on the chart until after the board decided Adebiyi's appeal of Manning and Pigatti's report, and (2) she "promptly" submitted the chart thereafter. But Stokes did not see it that way: she was unhappy with when and how Adebiyi delivered the chart and she expressed that to both Adebiyi and the board. The chart was initially due on September 30, 2018. Adebiyi submitted an early version of the chart on October 4, but Stokes was not satisfied and asked Adebiyi to revise it. The record is silent on when the internal appeal process was finalized, but Adebiyi submitted the final version of the chart on October 10. Stokes's letter to the board states that Adebiyi had to be "asked at least twice" about the chart because "her first response was void of all necessary information." In her declaration, Stokes also said that Adebiyi did not complete the chart by the required deadline and Stokes had to "repeatedly follow-up" with Adebiyi. Even drawing all reasonable inferences in Adebiyi's favor, we see no evidence of pretext—that is, a lie on Stokes's part that she was dissatisfied with Adebiyi's work on the chart. Stokes may have been unreasonable in her expectations and too hard on

Adebiyi, but that is not the relevant inquiry. A supervisor can have harsh expectations without raising a pretext issue. *See Parker*, 39 F.4th at 937–38.

Because of the chart and other issues, Stokes gave Adebiyi a "satisfactory" performance review shortly before recommending Adebiyi's termination. Stokes explained that she required her vice presidents to attain a "more than satisfactory" rating to meet performance expectations. Adebiyi questions Stokes's credibility and argues that this requirement is inconsistent with Adebiyi's own experience with the college. To raise an inference of pretext, Adebiyi must "come forward with at least some evidence from which we can infer" that Stokes's approach to evaluating her vice presidents' performance "is not credible, or that the [college] had some other policy that it followed" with the other vice presidents. *Hill v. Potter*, 625 F.3d 998, 1004 (7th Cir. 2010) (internal citations omitted); *see also Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[W]hen challenges to witness' credibility are all that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper."). Adebiyi has not done so. In fact, the evidence shows that the other vice presidents who retained their jobs under Stokes received a "more than satisfactory" rating on their performance evaluations.[4]

---

[4] Adebiyi gives two other examples of pretext that are either unsupported by the facts or irrelevant. First, she argues that complaints from coworkers in the counseling department could not have been a basis for her termination "because she didn't work in that department rather [others] supervised that area." Yet she testified that the counseling department was under her purview. Second, she argues that the complaints stemming from the Latino Center were unfounded. But the Latino Center example is irrelevant because Stokes agreed the complaints were unfounded and the

Adebiyi also relies on alleged comparators to establish pretext. When a plaintiff claims that she was treated differently from a similarly situated employee, she "must show not only that the two employees engaged in similar conduct (including considerations of differentiating or mitigating circumstances), but also that the conduct was material to the adverse employment action." *Brooks v. Avancez*, 39 F.4th 424, 437 (7th Cir. 2022). The requirement that comparable employees be similarly situated is flexible, depends on context, and must be guided by common sense. *South v. Ill. Env't Prot. Agency*, 495 F.3d 747, 752 (7th Cir. 2007). Still, "we frequently consider whether the employees in question had the same job description, were subject to the same standards, had the same supervisor, and had comparable experience, education, and other qualifications." *Poullard*, 829 F.3d at 855. The comparators Adebiyi offers are a director, two managers, and a faculty member. The college and Manning argue that Adebiyi's disparate treatment argument fails because none of these comparators are sufficiently comparable in all material respects— as a Vice President, Adebiyi was part of the college's executive team, oversaw entire departments, and reported directly to the President. Reasonable minds might disagree and, at bottom, "[i]f we had any doubts on th[is] score, they are assuaged by the other undisputed evidence in the record, which weighs decisively against" Adebiyi. *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 919 (7th Cir. 2022).

---

college decided not to take disciplinary action against Adebiyi on that basis.

**III**

We now turn to the district court's denial of Adebiyi's motion to file an amended complaint and take additional discovery, which we review for abuse of discretion. *Moran v. Calumet City*, 54 F.4th 483, 500–01 (7th Cir. 2022). "District courts generally evaluate a motion for leave to amend a complaint under Federal Rule of Civil Procedure 15(a)(2), which provides that courts should freely give leave when justice so requires." *Cage v. Harper*, 42 F.4th 734, 742–43 (7th Cir. 2022) (internal quotation marks omitted). "But under Rule 16, which governs scheduling orders and includes a deadline for filing amended pleadings, a 'schedule may be modified only for good cause and with the judge's consent.'" *Id.* at 743 (quoting FED. R. CIV. P. 16(b)(4)). "Given this tension . . . a district court may apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied." *Id.* "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011).

Because the timeline of the proceedings is important in determining good cause, *Cage*, 42 F.4th at 743, we begin with a detailed overview of what happened in the district court. In July 2020, the court issued a scheduling order under Rule 16(b) which stated that the schedule would be amended "only for good cause." The order set a deadline of December 19, 2020, to amend pleadings and March 31, 2021, to complete fact

discovery. Dispositive motions were due by August 31, 2021.[5] Defendants produced written discovery to Adebiyi and served her with discovery requests on October 1, 2020. Adebiyi produced written discovery between January and May 2021 but failed to seek any discovery herself until June or July 2021—almost one year after the scheduling order was entered and months after fact discovery had closed.

On August 9, 2021, four days after deposing Stokes, Adebiyi sought to file an amended complaint, in part to name Stokes as a defendant. Through this motion, the district court learned that the parties had failed to abide by the discovery schedule, "engaging in months of extra discovery without requesting or receiving permission from" the court. After requiring the parties to file a statement explaining their delinquency, the district court denied Adebiyi's motion, concluding that she failed to show good cause to file an untimely amended complaint. The district court observed that Adebiyi was seeking to amend her complaint approximately eight months after the court's deadline—an amendment that would require additional discovery, a change in the scheduling order, and, ultimately, delay in the case and prejudice to the defendants. The district court also found that Adebiyi had enough information to add Stokes as a defendant in a timely manner but failed to do so. Finally, the district court exercised its discretion and denied Adebiyi's request to extend the discovery deadline to allow for additional discovery.

---

[5] The order lists the date as August 31, 2020, but we assume that was a scrivener's error because an August 2020 deadline would make dispositive motions due before completion of fact and expert discovery.

We are mindful that both parties engaged in discovery well outside of the district court's schedule. However, it is Adebiyi as the plaintiff who did not timely seek the evidence to prove her case. *See Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002) (plaintiff's lack of diligence in failing to secure discoverable information not excusable); *see also Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1082 (7th Cir. 2016) ("A party who fails to comply with deadlines related to discovery or otherwise forestalls prosecution of their own case is not entitled to seek additional discovery when the opposing side moves for summary judgment."). The district court not only considered the arguments in Adebiyi's motion, but also gave both parties an opportunity to explain what happened. Under these circumstances, we find that the district court did not abuse its discretion.

## IV

South Suburban College did indeed terminate Adebiyi after she filed a charge with the EEOC and the IDHR. But Adebiyi has presented no evidence drawing a causal link between her charge and the adverse employment action she later suffered; this was her burden to survive summary judgment. Chiefly, Adebiyi has not identified evidence allowing a reasonable person to find the college's asserted qualms with her performance unworthy of credence, nor evidence that would support her allegations of suspicious timing. We are limited to the summary judgment record before us, and it does not support Adebiyi's retaliation claim.

AFFIRMED.